Good morning, your honors. Good morning, Mr. Gunn. How are you? Fine. Thank you. I'm representing Mr. Davis. A fundamental issue that this case presents, which I think is a very troubling one, is can a person be convicted of a form of obstruction of justice, ear witness tampering, when there's no underlying crime to start with? It says investigation into possible federal offense. Correct. That's your big hurdle. That's true. So the question becomes what possible modifies. If possible modifies federal, then at least the person's done something wrong. It's just a question of whether it's a state crime or a federal crime. If possible modifies the whole thing, then you have the situation that I think is a very troubling one. What you basically have, your honor, is it raises the specter of someone who's actually done nothing wrong becoming a criminal or a felon simply because he tried to protect himself in a foolish way. And I think it ought to at least give pause to turn someone into a felon for obstructing an investigation when there was no crime to investigate in the first place. Another way of looking at it is should we make someone a criminal because they panic when they're wrongfully accused? Now, if Congress meant to write the law that way, I think it's probably in their power. The question is whether they did. I think it really highlights or fits into something the Supreme Court once said about the rule of lenity, which I quote in my brief. They said, when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate before we choose a harsher alternative to require that language that is clear and definite. Well, I would submit there ought to be a similar caution when you're talking about making someone a criminal or covering up something that wasn't even wrong to start with. And that's really what happens here, and you have to decide whether Congress meant to do that. Now, you have cases from other circuits that address this question, and they basically go two different ways. You have the Rhonda case from the 11th Circuit that says that's what the statute means, and that's the way it goes. This person's a criminal even though he didn't do anything criminal to start with. But you have the Cooper case from the 3rd Circuit that says the opposite. The government tries to say that Cooper's a different case, but it's really not. In Cooper, there was no underlying crime because the defendant sold procaine instead of cocaine. Here there was no underlying crime because Mr. Davis made a false statement that wasn't material. So Cooper is not distinguishable. Your Honors, I guess, have the difficult judicial task of deciding which of those cases to follow. But I would submit there's strong policy reasons for following the Cooper case, and that the rule of lenity weighs in favor of following the Cooper case. And that, of course, is our first issue, and if you agree with us on that, Mr. Davis' conviction has to be vacated and a judgment of acquittal entered. But there's another, I think, really fundamental issue here, even if you get past that one, and that's the danger of a non-unanimous verdict. When the underlying crime that was supposedly tampered with or obstructed completely disappeared from the case, I would submit that that left the jury basically wondering, well, what was it that was obstructed? What's the offense or possible federal offense out there? There's certainly nothing, they didn't have the indictment to guide them anymore because that count was thrown out. And they had five different, if I count it right, they had five different forms submitted at five different times, or at least three different times, saying five different things. First there was Government Exhibit 1 that was submitted around the time of purchase, which said Mr. Davis intended to use the property as his, quote, principal residence, unquote, for at least three years in the future. Then there was Government Exhibit 2, the sales contract, that was also submitted around the time of purchase, which said Mr. Davis was an owner-occupant who intended to occupy the property as his, quote, primary residence, unquote, with no minimum period of time. Third, there was Defense Exhibit 101, the addendum that was again submitted around the time of purchase that said Mr. Davis intended to occupy the property as his primary residence for at least 12 months. Fourth, there was Government Exhibit 4, which was submitted six or more months after the purchase, it's not clear when, that said Mr. Davis was occupying the property, not that he intended to, as his, quote, principal residence, unquote. Then fifth, there was a statement which had been alleged in the indictment, Government Exhibit 5, three years after the purchase, that Mr. Davis was residing in the property as his, quote, sole residence, unquote. The jury had all five of those things before it, all five of those things to consider, all five of those things as possible federal offenses that were being obstructed, and no guidance from the indictment anymore after Count 1 was dismissed or thrown out of the case about which of those Count 2 was talking about. And in those circumstances, Your Honors, there was a real danger of non-unanimity. It's very similar to the Mastolato case, where there were two different schemes over a period of ten years, or the Pezzegno case, where there were three extortions over a period of, I think, eight or nine months. In those cases, you needed a unanimity instruction to make sure it wasn't some jurors thinking it was this, some jurors thinking it was that, and some jurors thinking it was this. And that's precisely the danger you had in this case. And even if you think, even if you conclude that ROND is the right case and a possible federal offense means a possible offense that's no offense at all under any law, there was that danger of non-unanimity, and we need a new trial because of that. Counsel, could you clear up something about the record here? Going through the record, I could not find anything in the record where Ms. Escamilla testified about the June 2002 date. That is another reason, Your Honor, that the evidence was insufficient in this case. And I tried to outline in my opening brief about the eight different things she testified about what he told her to say. But you never asked her, did you, on cross-examination? You didn't seek to elicit a specific time frame. I mean, it was a 50-page cross-examination here. And the date was no one elicited from her exactly when he told her to be there. I didn't do the cross-examination, not being the trial attorney, but you're right. But of course, the burdens on the government. We were perfectly satisfied with the testimony as it was, at least on that point, because we were perfectly satisfied that it didn't establish the false statement that was alleged in the witness tampering count, namely that he told her, I lived there in June 2002. So there wasn't a need to cross-examine on that point because it was clear to us that the evidence didn't establish it. What he told her was to say that he lived there. I think the most specific he got was, quote, at some point in time, unquote, which is very different than June 2002. And the government says this is a non-prejudicial variance, Your Honor. But if you think about it, given all the other issues in the case, it went to the heart of the defense because a key point in the defense was the addendum said he only had to live there for 12 months. That was what controlled, and he didn't need to live there for the three years. And, of course, June 2002 only mattered if he had to live there for three years. But she said he never lived there at all, period. She said that? Yes. Yeah. So if he says, if somebody tells me the magic date is day five, and she says he specifically told me to say he lived there during this time, and he didn't live there at any time between 1 and 10, that's what she said? Correct. Though her testimony was... He didn't live there any days. Correct. But her testimony was most certainly challenged... Well, now you're talking about something else. We're talking about you're challenging her testimony. I'm saying her testimony was he didn't live there any days. If the jury chose to believe that, then any day he chose within those times was going to be a lie. And he wanted her to lie about some day within those times. Well, that's only if the jury chose to believe her testimony, either believe or disbelieve her testimony in its entirety. Don't we pretend that's true? No, I don't think... On appeal? Don't we take the evidence that's most favorable to the verdict? Not in the context of the unanimity instruction issue, Your Honor. In the context of... I think Judge Nelson was asking a slightly different question about whether there was any testimony at all. Well, that's true, Your Honor. I'm sorry, Judge Nelson. But with respect to Judge Nelson's question, the jury had to believe and find that he told her. Not that it... The jury had to find that he told her, tell them I lived there in June 2002. That's what the jury had to find. Whether it was in fact true or not that he lived there in June 2002, that's just one step in the witness tampering count. They also had to find that he told her to make a statement about June 2002, and that he didn't do. Now, whether he... If the jury believed the defendant's argument that the contract only required Davis to live on the property for a year, the jury could find that the statement that he lived at the property after his obligation had elapsed was immaterial. So the date became very important and yet never appeared at all. Correct. And you asked about our cross-examination, Your Honor, but I think the burden was on the government to show through their direct examination, and they didn't. And so... You could have said, well, the date was X, which was after the one year, and one year was all that was required. Then it would become irrelevant and immaterial. But that was never established. Correct. Though I think given the judge's Rule 29 ruling, the jury shouldn't have been able to and shouldn't have believed that, at least beyond a reasonable doubt, that it was three years versus one year. I understand your argument. Explain that further. This last statement. All right, Your Honor. Judge Otero found that the evidence was insufficient to establish count one because the evidence was insufficient to establish that there was a three-year requirement instead of a one-year requirement. Your Honor. And that made the false statement, alleged false statement about June 2002 in the, I think, Government Exhibit 5, I believe it was, immaterial. And I don't think then you can assume that the jury then found beyond a reasonable doubt that it was a three-year requirement and it was material. I don't think... It wasn't what? There was a three-year requirement and that it therefore was material. I don't think you can have a jury making that finding beyond a reasonable doubt when Judge Otero, the district judge, found that no reasonable jury could find that beyond a reasonable doubt. Precisely, I guess, because we assume our juries reach reasonable decisions. I don't know if I'm being clear or not. Unless the Court has other questions, I'd save the rest of my time for rebuttal. Good morning. I may have pleased the Court. Bian Suh Kim for the United States. Section 1512B3, the witness tampering provision at issue in this case, states clearly that it applies to all witnesses. It applies to both the commission or possible commission of a federal offense. Implicit in that phrase, possible commission, is the concept that someone can be found guilty of witness tampering, even though it's determined that he's not guilty of the underlying federal offense. For the defendant's argument on this appeal to succeed, a radical reworking of the statute as it's presently written would have to be made. As the statute's now written, it refers to the possible or possible commission of a federal offense. For the defendant's argument to succeed, you would have to remove the phrase possible commission and then add before the word federal the word possibly, so that possible, that adjective, became an adverb modifying the adjective federal, and the new statute would read the commission of a possibly federal offense. Well, it's hard for me to understand. The June date was referenced in your indictment, and yet was never referenced in your direct examination. I don't know whether you were the lawyer below. I wasn't the lawyer below, but I can address that question, Your Honor, which goes to the variance issue that's presented in this appeal. The evidence was as follows, Your Honor, and let me say at the outset that you're correct. There was never any testimony by Ms. Escamilla that the defendant told her to lie specifically about the date of June 2002. That said, if you look at all of the evidence, I think it's very clear that the government did prove that, and this is how. What the evidence showed, first at GER 7, was that the defendant, when he was interviewed prior to Ms. Escamilla, he acknowledged to the agents that he had a three-year commitment beginning in or about June of 1999, or July of 1999, that extended to June of 2002. So we have that defendant statement listed through an agent's testimony prior to the interview of Escamilla. Then what Escamilla testifies at trial, and this is at GER 15, is that the defendant testified prior to Ms. Escamilla, and at GER 50, oh, excuse me, before Ms. Escamilla testifies about what she told the agents, she says that after the defendant's interview with the agents, they spoke with one another, and the defendant told Escamilla, and this is at GER 50 and 61, to tell the agents that he lived with her, and that's as specific as that testimony got. Then, Your Honor, at GER 50, excuse me, 47 and 52, what Escamilla says is that she told the agents that the defendant lived there from July 1999 through June of 2002. And the record also establishes, Your Honor, that, in fact, there was no reason for that end date of June 2002, except for the fact that that's what the defendant must have told Ms. Escamilla. And that's what Ms. Escamilla had to say, because she, in fact, continued living in that residence, and according to the defendant's own testimony, he lived there until 2003. And so when you add all of these facts together, Your Honor, and certainly when you view these facts in the light most favorable to the government, I think the most reasonable interpretation by far is that the defendant is the one who told Ms. Escamilla to tell the agents that the defendant lived with her in June of 2002. And that's what she told the agents, and because the greater includes the lesser, that three-year time period includes the date of June 2002, the government met its burden in this case. There was no material ---- A lot of speculation in there. I don't think so, Your Honor. I think that if you ---- You know what the truth is? This case is a mess. And whoever prepared this case for the government wasn't thinking, never diagrammed it. The people at HUD, their paperwork is a mess, too. And, you know, we have these arguments here that maybe are fascinating to a logician, but I challenge anybody in this room that's listening to what you're saying or what Mr. Gunn has said, just tell me exactly what you've said. Well, if I may, Your Honor, take another crack at this. It's a criminal case, too, you know. Yes, Your Honor, but with respect to ---- Why, why, what did, refresh my memory, what did the judge say when he tossed out the first count? Well, I think that's important, Your Honor. What he said was that the government had met its burden because there was this issue of what the addendum to the original contract was and, therefore, whether the 2002 recertification could have been material. The judge in the minute order explaining his dismissal of count one was very clear to say that he was not holding that there had been no crime committed. And that's relevant to the first issue in this appeal about the possible commission of a crime. He simply said that the government hadn't met its burden beyond a reasonable doubt. That was his explanation, Your Honor, for why he denied the defense's rule 29 motion at count two. And it's relevant to the first issue, Your Honor, because this is not a case where it's legally impossible for some reason, perhaps like the Cooper case, which we saw earlier. It's not a case where there was some legal impossibility with respect to the government's proving the underlying federal offense, but rather a situation clearly contemplated by the statutory language of possible commission in which a crime may have occurred, but the government hadn't failed, hadn't satisfied its burden beyond a reasonable doubt. Now, even if the government hadn't satisfied its burden by a preponderance, we would submit that there could still have been a crime committed. There would still have been a possible commission, the notion of possible commission being below that of even a preponderance standard. But, Your Honor, Judge Pragerson, you expressed some concern with respect to the variance issue, and I'd like to return to that to try to ease your concerns. With respect to the variance issue, the question is whether there was a material difference in the evidence that was presented at trial and that was alleged in the indictment. Now, the indictment alleged that the witness tampering involved the defendant telling Ms. Escamilla to lie about his living in the house in June of 2002. And it did that, Your Honor, because that was the date of the recertification that was charged in count one. But the government didn't have to prove June 2002 specifically. There was no element requiring it to prove that. And the government, what the government did prove is that Ms. Escamilla lied, and the defendant told Ms. Escamilla to lie about a time period clearly encompassing that month of June 2002. And I don't think that there's any dispute about that, Your Honor. So I think that the variance issue is actually relatively straightforward. It's simply the question of whether the date of June 2002 is encompassed within the three-year period that it's clear from the record as a whole the defendant instructed Ms. Escamilla to lie about. With respect to the unanimity argument, Your Honor, and it's easy to confuse with the unanimity argument. With respect to the variance issue, there's simply no requirement of unanimity in the first place under the Shad v. Arizona case. That's the Supreme Court case holding that with respect to a particular element, the government doesn't have to prove any predicate factual matters or alternative legal theories in particular. Rather, the government has to prove with respect to witness tampering what the crime, the underlying federal offense, was. And that's what the government alleged in the indictment and did prove, namely a violation of Title 18 United States Code Section 1001. Therefore, it didn't matter which of the statements, even if there was any jury confusion, which we submit there was not, it didn't matter which of the 1001s or documents that are cited by the Appellant's Counsel may have formed a basis for the jury's conclusion that there had been a possible commission of 1001. That's the first point. The second point is that there was no genuine jury confusion over this issue. As the district court properly pointed out, the defendant's argument that simply by virtue of having granted the Rule 29 motion with respect to count one would have created jury confusion is simply speculative. There's no logical reason and there's no practical reason why the jury, even after count one had been dismissed, wouldn't be able to consider the evidence presented as to the June 2002 recertification falsity with respect to its consideration of whether a possible commission of a federal offense, namely Title 18 United States Code Section 1001, had occurred. So because there was no unanimity requirement in the first place and because there was no basis for giving a unanimity instruction, that argument fails. There's one other issue, Your Honors, that I wanted to address because there's a point that I wanted to make this morning that's not contained in our briefs but that I thought might be important for the Court to know. Count one was dismissed after argument. That's correct, Your Honor. And defense counsel asked if he could have some time to argue the case to the jury. And based an argument on the fact that count one was no longer in the case, and that was denied. And that's precisely the issue I wanted to turn to, Your Honor. Was that an abuse of discretion? It was not, Your Honor, and I think principally for this reason. The defendant's written Rule 29 motion, which led to the dismissal of count one, focused solely on count one. So the defendant was on notice right there that there was a possibility that in the end of the case, count one might no longer exist, but count two would. And then, Your Honors, there was actually explicit discussion in the record after the motion had been filed but before summations, in fact, the week before summations were given, about the desirability of the district court ruling on the Rule 29 motion prior to summations. And in fact, the defense's position was that the district court should rule prior to summations so that, as they say in their brief here on appeal, they could tailor their arguments to whatever count was existing at the time, if any. When the district court basically denied that request and held the Rule 29 ruling over until after summation, the defendant and defense counsel were on ample notice that after summation they may end up with a situation where there was only count two remaining in the case and not count one. And therefore, they made arguments in their closing arguments that addressed both counts. They were on notice that they needed to make an argument as to count two because count one might be dismissed because of the pending Rule 29 motion, and they did. They did make arguments as to count two. They argued by my count for over five pages about count two, arguing at length about how Ms. Escamilla had been pressured by the agent's coercive interviewing techniques to basically tell the government what it wanted but which wasn't the truth. That was their argument throughout the trial. That was the argument they made in summation. And there's no reason to believe on that record that had they had the benefit of the Rule 29 ruling prior to summation, that their summation would have been any different, and they were on ample notice of what might occur after summation, which is what did occur, which is that count one was dismissed and count two remained. And you're on to the discussion. You're on to the discussion. I think the defense counsel should have said that before the court. It's reported transcript on the date of July 20th. And you think they should have made an argument as to count two and said to the jury, well, let's assume that the court dismisses count one and then go on from there? We're not saying that the defense counsel should have said that to the jury, Your Honor. I think that in the absence of a ruling, the defense counsel did what was reasonable, which is that they addressed both of the counts. And they argued vehemently and gave compelling arguments with respect to both of those counts. They spent a lot of time on the first count. And they spent a lot of time on the second count, Your Honor. Five pages, you say. Five pages, Your Honor. Five pages on the first count. It was more than five pages, Your Honor, but five pages was ample room for them to make their principal argument, which is that Estimia shouldn't be believed. She had been pressured by the agents. And, of course, the argument with respect to count one, Your Honor, the materiality issue in particular, which they did argue to the jury, I think that they also tried to argue that that issue bled over to the second count as well, and that the two counts, as they argued to the district court in their Rule 29 ruling, should go together. But just to give the court the citation I was going to give, that's the reporter's transcript for July 21, 2006, at pages 136 through 137. That's where there's this discussion about the timing of the court's Rule 29 motion, and that's why we believe the record clearly indicates that defense counsel was on notice about what could happen as a result of its own Rule 29 written motion focusing on count one. There's also a marital privilege issue in this case, Your Honor, but unless the court has any questions about that issue or any of the other issues that we've discussed, I'll submit all my briefs. Well, since you raised the issue, how can we be certain that the violation of the marital privilege was harmless when the alternative source for that information was the court? I mean, it was Escamilla who had suspect credibility. Well, Your Honor, I would answer in this way. That wasn't the only alternative source of that information. What else was there? The defendant himself made a statement to the agents that was brought out at trial to the effect that he rented out the apartment, that he knew that there was a three-year time commitment, and he asked at one point, who turned me in? He filed a statement or made a statement to the DMV listing his real address with his then-wife, Brenda, instead of the Rialto property, which was the property that was part of the HUD program. So there were many sources of information and evidence that were damning to the defendant besides simply the marital privilege communications. But, Your Honor, with respect to the communications that are really at issue, the deposition transcript, if that's what we're talking about, only contained 38 words by our count that shouldn't have been submitted. And those words were completely irrelevant to the issues at hand. They just related to why his then-wife, Brenda, didn't want him to buy the Rialto property. They didn't say anything about his having rented out the Rialto property as soon as he purchased it through the HUD program. That was the really damning evidence from the deposition transcript, Your Honor, and that evidence was undisputedly properly admitted, assuming that we get past the brief and arguable misstatement of the Robertson standard with respect to irreconcilability. But with respect to that issue, whether the evidence supports the district court's finding that the two people in the marriage were irreconcilably separated, the defendant himself stated on the stand that as of the end of 2001, it was over. There was no chance of reconciliation. Those were the defendant's words during his testimony in this case. And so in light of that testimony, certainly any possible misstatement of the legal standard by the district court at one time was completely harmless. Unless the court has any further... Have there been any other prosecutions under this particular program, HUD program of officer living in a neighborhood? I believe there have been, Your Honor. I'm speaking outside of the record, but I believe there have been, but I haven't personally been involved in any of those. Thank you. Just a couple points on the last two issues that were addressed. On the marital privilege issue, just a couple factual points. First, the defendant himself allegedly made this admission to the agents. He also listed his address with DMV as the Brenda Davis house address. On the other hand, Mr. Davis testified that that is not what he said to the agents and that the agent misunderstood him. So that was disputed just as much as Escamilla's testimony was disputed. Second, there were a number of documents, and I think this was fairly significant defense evidence. He did not use his address as an address for mail and such things. So that evidence certainly went both ways. I wanted to talk just briefly about the closing argument issue. I guess Mr. Kim and I count the amount of argument about count two and the closing argument differently. I count five lines of argument about count two, which I quote at page 31 of my opening brief. I quote at page 31 of the closing argument how much time got spent on count two versus count one. Of course, without count one in the case, the whole closing argument would have been about count two, however many pages it is. Mr. Kim says, well, the defense had ample notice that it might be in this position. Well, I submit that knowing you're going to be between a rock and a hard place doesn't mean you're not between a rock and a hard place, and it doesn't mean it's fair to put the defense between a rock and a hard place. Suppose the judge has done what I think some judges do, waited for the jury to come back with a verdict, and then ruled on a renewed motion or on the motion itself. Then your argument here would be?  I think it would be. If you lost authority, that's what a judge has to do when he rules after the case has gone to the jury. Going to the jury, all defense knows is there are two counts there against my client. Defense chooses to argue only one of the counts for whatever reason. The defense has made a motion already on one of them, but he just chooses to argue that, probably because they're thinking what you're arguing on appeal. Well, if count one goes, count two is nothing. It has to go, too. I don't think I'd be thinking that. More or less, you're saying count one was gone, count two has to go. Whatever. The point is, defense counsel decides he's going to argue count one, and if the judge hadn't ruled before the jury came back, and he could have done that, there's no question about that, right? The judge could have ruled on the motion after the verdict. What's the best case that the judge at that point had the obligation to set aside the whole thing and they argue it and go forward? I think the only cases I found on this issue are the ones I cite, Your Honor. There's no cases the other way, though, either. First of all, we're not saying that in every circumstance where one count's dismissed, this has to be done. I think it's the special circumstances of this case. Second, it is a little bit different when we're talking about whether or not to do it before or after closing argument, but before a verdict versus before or after a verdict. There's other reasons to delay it until after the verdict that might be valid, but I think when the judge does it in this particular order, it raises more problems. But if the judge delays until after the verdict, then an appeal can be taken. By the government. By the government. Yes. And that might be one reason why then you have a different sort of balancing in the process. Here that balancing wasn't in the process because it was just a question before or after closing argument. And it really wasn't as problematic to reopen closing argument when I think the jury hadn't even started its deliberations, though they'd heard argument and were ready to start deliberations. That's a little bit different than setting aside a verdict in terms of the cost of the trial process and the loss of resources and so on. So I think the balance is a little bit different, and I think when you're talking about an abuse of discretion standard, you're talking about a balancing. I wanted to touch a little bit more on the June 2002 issue and the sufficiency of showing that. There perhaps was some testimony by Ms. Escamilla that she told the agents that Mr. Davis lived there between June of 99 and June 2002. What was missing was any testimony that that's what Mr. Davis told her to say or that in particular that Mr. Davis told her to say something about June 2002. I think Judge Pragerson has a very good point. It starts becoming pretty speculative when you start speculating that, well, maybe she said this. Maybe when she said between June of 99 and June 2002, she meant the whole period. And maybe when Mr. Davis spoke to her, he told her the whole period. You start getting sort of chain upon chain upon chain or link upon link upon link of a chain of inferences that I think then fall short of beyond a reasonable doubt. So I don't think what the government's pointed to in the record, at least if I'm reading it right, is enough to say that the government met its burden. One other thing I wanted to note, Judge Pragerson, you asked what the district court said when he granted the motion. One of the other things the district court said that I thought was striking in Excerpt of Record 47 and cited or quoted in my brief at page 12, the opening brief, he said it wouldn't even make preponderance of the evidence under the civil trial burden of proof. That's how messed up this case was and how messed up the government's evidence was and why it doesn't meet the standards we should require in a criminal trial. I'll submit unless the court has a question. Thank you. I just want to say this, that this case is well argued on both sides.
judges: Pregerson, Nelson, Fernandez